UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Rashida Marshall and Jean Marquez G.
Bryant Marzette, individually and
as next friends of minor children, A.M.
and M.M.,

    Plaintiff,

v.                                                                  Case No. 19-10108

Wayne County Department of Child            Sean F. Cox
Protective Services,                                      United States District Court Judge

    Defendant.
_____/

## OPINION AND ORDER DENYING MOTION TO AMEND (ECF No. 20) AND GRANTING MOTION TO DISMISS (ECF No. 17)

The Wayne County Department of Child Protective Services ("CPS") removed Plaintiff Rashida Marshall's newborn baby from her care. CPS concluded that this removal was appropriate because Marshall's older child had been removed from her care due to physical abuse and Marshall had not yet complied with her parent-agency agreement to improve her ability to parent.

Marshall and the child's father sued CPS, alleging that the child's removal was based on information that CPS knew was false and that CPS placed their child in an unfit foster home. CPS now moves to dismiss this case, asserting sovereign immunity. Plaintiffs oppose this motion on the merits, but have also filed a motion to amend their complaint to add individual social workers and "John Doe" defendants. CPS opposes Plaintiffs' motion to amend, arguing that the proposed amendments would be futile and cause an undue burden.

1

Even with the proposed amendments, Plaintiffs' federal claims are either barred by sovereign immunity or the absolute immunity afforded to social workers when they act as legal advocates for children. Accordingly, the Court will deny Plaintiffs' motion to amend and grant Defendants' motion to dismiss.

## BACKGROUND

In October 2015, a daughter ("A.M.") was born to Plaintiffs Rashida Marshall and Jean Marquez G. Bryant Marzette. However, Marshall's time with A.M. was short-lived. On November 4, 2015, CPS removed the month-old A.M. from Marshall's custody. Am. Compl. ¶ 10 (ECF No. 8, PageID 26). CPS believed that this removal was appropriate because Marshall "has an older child [("M.M.") who is currently a ward of [the state]." *Id*. at ¶ 13. CPS had removed M.M. from Marshall's custody "on 12/16/2014 due to physical abuse." *Id*. As of A.M.'s removal, Marshall "ha[d] not completed her parent-agency agreement services to improve her ability to parent and [M.M.] remain[ed] in foster care." *Id*. CPS also alleged that Marshall had a violent criminal record. *Id*.

Plaintiffs allege that, in the months after A.M.'s removal, "CPS wrongfully placed A.M. with unfit and unsuitable persons, and foster homes, subjecting A.M. to bullying, emotional harm, and abuse." Am. Compl. ¶ 10. Plaintiffs also object to how CPS has treated M.M and its unwillingness to place the children with their father:

> Upon information and belief, CPS recklessly placed Ms. Marshall's children with people convicted of crimes involving violence. As the children's father, Mr. Bryant Marzette was available and eligible for placement—but [CPS] arbitrarily and recklessly failed to do so. Instead, Defendants subjected Mr. Bryant Marzette to

2

> supervised visits with this children and restricted his access to his children. Defendants placed Mr. Bryant Marzette on a three-month parenting plan of supervised visits; Defendants made such restrictions on Mr. Bryant Marzette even though he had not been accused of any wrongdoing.

Am. Compl. ¶ 11. Plaintiffs also allege that, in 2017, CPS opened "numerous baseless investigations to be opened against" them. *Id.* at ¶ 12. These investigations resulted in "different case plans, protocols, and conflicting mandates" that caused "an unreasonable disruption of the Marshall Family's right to exist as a family, free from arbitrary government power." *Id.* Despite CPS's interference, "Ms. Rashida Marshall has maintained a consistent and continuing presence in her children's lives, providing guidance, love and support for her children." *Id.* at ¶ 14.

On January 11, 2019, Marshall filed his lawsuit against CPS. (ECF No. 1). For the next ten months, nothing happened in the case because Marshall did not serve the only defendant. On October 21, 2019, the Court issued an order to show cause why this case should not be dismissed for failure to prosecute. (ECF No. 6). On November 4, 2019, Marshall responded to the Court's show-cause order (ECF No. 7) and filed an Amended Complaint. (ECF No. 8). In this Amended Complaint, Bryant Marzette joined Marshall as a plaintiff. CPS remained the only defendant. Plaintiffs served CPS on November 26, 2019. (ECF No. 14).

Plaintiffs' Amended Complaint is the operative complaint in this case and brings five claims against CPS: (1) "Unlawful Seizure of Person Under Section 1983 of the Civil Rights Act of 1964;" (2) "Conspiracy to Deprive Constitutional Rights, In Violation of Section 1983 of the

Civil Rights Act of 1964;" (3) "Intentional Infliction of Emotional Distress;" (4) "Abuse of Process;" (5) "Defendants Child Protective Services' Void Case Plan Agreement."[1]

On February 14, 2020, CPS filed a motion to dismiss, arguing that, as an arm of the State of Michigan, it is entitled to sovereign immunity under the Eleventh Amendment to the United States Constitution. On March 23, 2020, Plaintiffs responded to CPS's motion, arguing that their suit is permissible because they seek prospective injunctive relief and because CPS has waived its sovereign immunity

Simultaneous with the filing of the response, Plaintiffs also filed a motion to amend their Amended Complaint. (ECF No. 20). Plaintiffs' proposed Second Amended Complaint adds alleged individual employees of CPS (Annie Ray and Kenyatta Wilborn) and ten individual "John Doe" defendants. Plaintiffs seek to sue these individual defendants "in their individual and official capacities as social workers for Wayne County." (ECF No. 20-2, PageID.92). The proposed Second Amended Complaints' factual allegations and causes of action are the same as the now-operative Amended Complaint.

On June 15, 2020, CPS filed a response to Plaintiffs' motion to amend. (ECF No. 24). CPS argues that allowing Plaintiffs to amend their complaint a second time to create an undue burden and be prejudicial. CPS also argues that Plaintiffs' proposed amendment would be futile because the proposed individual defendants are entitled to the absolute immunity afforded to social workers.

---

[1] The Court will refer to Plaintiffs' claims as delineated in this paragraph. So the "Unlawful Seizure of Person Claim" is "Count I," the conspiracy claim is "Count II," and so on.

On June 15, 2020, CPS also filed a reply in support of their motion to dismiss. (ECF No. 25).

## ANALYSIS

**I.    CPS's Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6)[2] provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. The Court must construe the complaint in the light most favorable to the plaintiff and accept its well-pleaded factual allegations as true. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). To survive a motion to dismiss, the complaint must offer factual allegations sufficient to make the asserted claims plausible on their face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions couched as factual allegations will not suffice. *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**A.    Sovereign Immunity**

CPS asserts that it is entitled to sovereign immunity under the Eleventh Amendment to the United States Constitution. The Eleventh Amendment bars civil rights actions against a state, its agencies, and its departments unless the state has waived its immunity and consented to suit, or Congress has abrogated that immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).

---

[2] CPS also moves for dismissal under Rule 12(b)(1) and (2). Because the Court concludes that dismissal is warranted under Rule 12(b)(6), the Court need not apply these rules.

To begin, the Court must determine whether CPS is an agency of the State of Michigan. CPS alleges that it is a division of the Michigan Department of Health and Human Services. (ECF No. 17, PageID 77). And, indeed, federal courts in Michigan have consistently recognized that seemingly county-level social services agencies, like CPS, are actually divisions of the State of Michigan. *See Lintz v. Skipski*, 807 F.Supp. 1299, 1303 (W.D. Mich. 1992) (collecting cases).

Moreover, Plaintiffs do not dispute that CPS is a state agency.[3] Thus, the Court concludes that CPS is an agency of the State of Michigan and therefore entitled to invoke sovereign immunity.

Eleventh Amendment immunity applies "regardless of the nature of the relief sought," *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984), and "bars all suits, whether for injunctive, declaratory, or monetary relief, against the state and its departments by citizens of another state, foreigners, or its own citizens." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) (internal citations omitted); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (citing *Thiokol*). The Eleventh Amendment, however, does not preclude suits against state officials for prospective injunctive relief to address continuing constitutional harms. *See Carten v. Kent State Univ.*, 281 F.3d 391, 397 (6th Cir. 2002) (citing *Ex parte Young*, 209 U.S. 123 (1908)) (the "*Ex parte Young* exception"); *McCormick*, 693 F.3d at 662 (citing *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000)).

---

[3] There are a few other indications that CPS is actually a state agency. First, despite the case caption used by Plaintiffs in their initiating complaint, the docket reflects that the defendant in this case is the Michigan Department of Health and Human Services. Second, CPS is represented by the Michigan Department of the Attorney General, not Wayne County Corporation Counsel. Third, an internet search of "Wayne County Child Protective Services," returns top results for the Michigan Department of Health and Human Services.

The State of Michigan has not consented to be sued for civil rights actions in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986), and Congress did not abrogate Eleventh Amendment immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Thus, Plaintiffs' Amended Complaint can only proceed if it meets the *Ex parte Young* exception.

Plaintiffs' argument that *Ex parte Young* applies to their Amended Complaint stumbles out of the gate. *Ex parte Young* only allows for prospective injunctive relief against individual officials. *See Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) ("[T]he Supreme Court announced an exception to Eleventh Amendment sovereign immunity in *Ex parte Young* for claims [under federal law] for injunctive relief *against individual state officials* in their official capacities.") (emphasis added); *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-508 (6th Cir. 2008) ("Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law…") (emphasis added). But Plaintiffs' Amended Complaint does not name an individual state official as a defendant; it only names CPS, which is a state entity that is considered part of "the state and its departments." *Kanuszewski v. Mich. Dep't of Health and Human Services*, 927 F.3d 396, 416-417 (6th Cir. 2019) (finding that sovereign immunity barred prospective, injunctive relief against the Michigan Department of Health and Human Services.) Thus, the *Ex parte Young* exception cannot save Plaintiffs' Amended Complaint from CPS's invocation of sovereign immunity.

Plaintiffs also argue that CPS has waived its sovereign immunity. (ECF No. 21, PageID 118). Plaintiffs' argument appears to be that this waiver was effectuated by CPS's alleged unconstitutional conduct itself. (ECF No. 21, PageID 118) ("There is no dispute that Plaintiffs allege that Defendants recklessly initiated an investigation and caused a traumatic removal of the

7

Plaintiff children from their family and home.") However, a waiver of sovereign immunity must be "in the form of an unequivocal indication" and is only valid "where stated by the most express language or by such overwhelming implication from [statutory] text as will leave no room for any other reasonable construction." *Abick*, 803 F.2d at 876-877 (citations omitted). In other words, waiver of sovereign immunity must be explicit; it cannot be achieved by mere conduct. And the Supreme Court has expressly held that the State of Michigan (and by extension its subdivisions including CPS) has not waived it sovereign immunity against civil suits in federal court. *Id*. at 877. Accordingly, Plaintiffs' waiver argument is meritless.

Thus, the Court concludes that Plaintiffs' Amended Complaint is barred by CPS's sovereign immunity. Accordingly, Plaintiffs' Amended Complaint does not state claims upon which relief can be granted, and CPS's motion should be granted. However, this conclusion does not dispose of this case because Plaintiffs have moved to amend their complaint. Thus, the Court turns to that motion.

## II.    Motion to Amend

Plaintiffs seek to amend their complaint to add individual CPS social workers and "John Doe" defendants. Plaintiffs seek to sue these officials "in their individual and official capacities as social workers for Wayne County." CPS opposes this amendment, arguing that it would be futile, create an undue burden, and cause prejudice.

The Court "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a). But denial may be appropriate when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or]

8

futility of the amendment[.]" *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 613 (6th Cir. 2005). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005).

Here, the addition of the proposed individual defendants would be futile because they would not save Plaintiffs' federal claims.[4] "[S]ocial workers enjoy absolute immunity when acting in their capacities as legal advocates." *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015). "A social worker acts as a legal advocate when initiating court proceedings, filing child-abuse complaints, and testifying under oath." *Id*. A social worker enjoys this absolute immunity even "under allegations that the social worker intentionally misrepresented facts to the family court." *Id*. This broad immunity "enables social workers to protect the health and well-being of the children . . . without the worry of intimidation and harassment from dissatisfied parents." *Id*. (quotations omitted).

As to Plaintiffs' federal claims, the wrongdoing that Plaintiffs allege the proposed individual defendants to have done occurred solely in their roles as legal advocates. Importantly, Plaintiffs' federal claims are limited to the *seizure* of their children. (ECF No. 20-2, PageID 97-100). There is no allegation that this seizure occurred outside the typical state court proceedings that occur when a child is removed from a parent's custody. To be sure, Plaintiffs believe that the child-abuse and other allegations that prompted these removal proceedings were false, and that the individual defendants knew they were false, but *Barber* makes clear that a social worker's

---

[4] For the purpose of determining whether Plaintiffs' proposed amendments are futile, the Court will only look to Plaintiffs' federal claims because those claims serve as the basis for the Court's subject-matter jurisdiction.

"absolute immunity holds, even under allegations that the social worker intentionally misrepresented facts to the family court." *Barber*, 809 F.3d at 844; *Pittman v. Cuyahoga County Department of Children & Family Services*, 640 F.3d 716, 723-725 (6th Cir. 2011) (holding that a social worker accused of making numerous misrepresentations in a child-abuse complaint and two supporting affidavits enjoyed absolute immunity because she was acting "in her capacity as a legal advocate" when she submitted those documents).[5] Put simply, the addition of the proposed individual defendants would be futile because, as the facts are alleged, they are entitled to absolute immunity from Plaintiffs' federal claims.

Accordingly, Plaintiffs' motion to amend does not prevent dismissal of this action, and this motion will be denied.

## CONCLUSIONS

For these reasons, the Court **DENIES** Plaintiffs' Motion to Amend (ECF No. 20) and **GRANTS** Defendant's Motion to Dismiss (ECF No. 17).

**IT IS SO ORDERED.**

> s/Sean F. Cox
> Sean F. Cox
> United States District Judge

Dated:  September 1, 2020

---

[5] Plaintiffs' briefing on this issue attempts to broaden the proposed individual defendants' actions beyond what is supported by the allegations of the Proposed Second Amended Complaint. Throughout their briefs, Plaintiffs cite to cases where Courts have found that absolute immunity does not attach to social worker's actions if they are acting as investigators. But again, Plaintiffs' federal claims are limited to the seizure of their children, which was apparently effectuated through the proper court proceedings. Although Plaintiffs alleged that CPS agents "caused numerous baseless investigations to be opened against the Marshalls," those investigations occurred in 2017, after the seizure that forms the basis for their federal claims. Thus, alleged abuses of the social worker's investigatory powers (and allegations regarding misconduct that supposedly occurred while the children were in CPS's custody) are only relevant to Plaintiffs' state-law claims.